Bruce E. Baldinger, Esq, (NJ Bar #018371984)
**THE LAW OFFICES OF BRUCE E. BALDINGER, LLC**
365 South Street
Morristown, NJ 07960
Telephone: (908) 218-0060
*bbaldinger@baldingerlaw.com*
Attorneys for Plaintiff, Salon Development Corp.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALON DEVELOPMENT CORP. | |
| Plaintiff, | Case No. |
| v. | |
| AMANDA VINAL, SHELBIE BRENNEN, UNADILLA HAIR COMPANY and JANE DOE | |
| Defendants. | |

**VERIFIED COMPLAINT**
**FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Salon Development Corp. ("Salon Development"), for its Complaint for Injunctive and Other Relief against Defendants Amanda Vinal ("Vinal"), Shelbie Brennen ("Brennen") and Unadilla Hair Co. ("Hair Co."), states as follows:

INTRODUCTION

1. This action arises out of defendants Amanda Vinal nee Barkman's ("Vinal") and Shelbie Brennen's ("Brennen") breach of their restrictive covenants with Salon Development contained in

their respective "Non-Competition and Non-disclosure Agreement" ("NDA") (attached to the Declaration of Jonathan Shaw respectively as Exhibit A, Exhibit B, and collectively referred to as the "Agreements").

## JURISDICTION AND PARTIES

2. Plaintiff Salon Development is a New Jersey corporation with its principal place of business in East Hanover, New Jersey.

3. Upon information and belief based upon her personnel records with the Salon Development, Vinal is a resident of the State of New York.

4. Upon information and belief based upon her personnel records with the Salon Development, Brennen is a resident of the State of New York.

5. Upon information and belief, Unadilla Hair Company ("Hair Co.") is a sole proprietorship whose owner, Brennen, is a resident of the State of New York.

6. This Court has personal jurisdiction over Brennen and Vinal because they obtained employment with Salon Development, a New Jersey entity with offices located in East Hanover.

7. Subject matter jurisdiction is appropriate in this matter pursuant to 28 *U.S.C.* § 1332(a)(1) as there is complete diversity. Salon Development is a New Jersey corporation, with its principal place of business in East Hanover, New Jersey. For jurisdictional purposes Salon Development is a citizen of New Jersey. Vinal, Brennen and Hair Co. are each a citizen of New York. Further, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## FACTUAL BACKGROUND AND COMMON ALLEGATIONS

8. For over five decades, Salon Development has been in the intensely competitive world of hair styling and family beauty salons. Salon Development, a family-owned enterprise, has company-owned salons in New Jersey, New York, Connecticut, Maryland and Pennsylvania.

9. Despite being in a competitive industry, Salon Development has been able to achieve success in the industry by establishing a strong reputation for providing uncompromising, professional customer service to its client base and through the extensive and critical relationships that it has developed with its customers. Salon Development has expended substantial amounts of money, time, and resources over the years to select, hire, and train employees to build on and strengthen Salon Development's reputation and to develop and continue its relationships with its clients and its business partners.

10. Salon Development's success in the industry is also largely attributable to its confidential, trade secret, and proprietary information regarding, among other things, its software, services, techniques, strategic business plans, client and prospect lists, client preferences, pricing and contract details, operational procedures, and its marketing and sales strategies. Salon Development has invested significant time, money, and resources to generate, develop, and maintain its confidential, trade secret, and proprietary information.

11. Vinal was a long term employee with Salon Development having joined the company in June 28, 2003 as a stylist at Salon Development's salon in Sidney, New York. In her position with the Salon Development, Vinal was provided with a vast array of proprietary information inclusive of its customer list, pricing menu, purchasing costs, employee training, and marketing methods. Importantly, she had control over Salon Development's customers with whom she provided services and built a trusted relationship. These are aspects of Salon Development's business not accessible to the public or to Salon Development's competition.

12. On the date of her commencement of employment, Vinal (then Barkman) signed an NDA. In that document, she recognized that Salon Development is "engaged in the highly competitive business of developing and operating hair salons." She further agreed that as part of her position

with the company she would receive "trade secrets, confidential information and inventions…" (NDA ¶IA).

13. In addition to agreeing not to divulge trade secrets (NDA ¶IC), she also agreed to for a period of 12 months after her termination (and while employed), she would not "directly or indirectly, on his/her own behalf or another's behalf, be employed by, be contracted to, own, manage, operate, control, participate in, or be associated in any manner with the ownership, management operation or control of any hair salon located within a ten mile radius of any SD hair salon in which the Employee has worked operated managed or supervised during the last twelve months of his/her employment with SD." (NDA ¶IIB).

14. This provision was narrowly tailored in that it (a) was envisioned for a brief period of time, (b) sought protection only within a tightly defined distance, and (c) only applied to salons that the employee actually worked at and could effectively cause harm. Each of these were created only to ensure that a departing employee could not use the information imparted to her against Salon Development and that it could take sure measures as to protect its good will.

15. The NDA also provided that for the same twelve-month period of time, the employee would not "directly or indirectly solicit, contact call upon, communicate with or attempt to communicate with any customer or former customer of SD for the purpose of providing any product or service reasonably deemed to be competitive with any product or service then offered by SD." It further added that any restrictions were only as to customers or former customers with whom Vinal had contact or received confidential information. (NDA ¶IIB).

16. The NDA also had a provision which disallowed the departing employee from hiring or recruiting for hire any other employee of Salon Development. This was once again tailored only

to those employees whom the departing employee had contact with during her employment. (NDA ¶ID).

17. The NDA further included the right to obtain injunctive relief, without bond, along with attorney's fees in the event of a breach by the employee. (NDA ¶IIE and IIID).

18. On or about June 11, 2015, Brennen signed her own NDA which contained the same terms and conditions. Her position with Salon Development commenced on June 13, 2015. Like Vinal, the opportunity of employment would not have been extended to her had she not agreed to enter into the NDA and agreed to provisions implemented to protect Salon Development's goodwill and customer base.

19. Both parties also were provided with and worked under an Employee Handbook ("Handbook"). The Handbook required the parties to arbitrate their claims but permitted the seeking of injunctive relief as Salon Development does through this action. As each of the Defendants voluntarily terminated their employment with Salon Development and are no longer active employees, the obligation upon Salon Development to arbitrate these claims are no longer contractually binding.

20. On or about September 24, 2022, Brennen and Vinal jointly gave notice effectively terminating their employment with Salon Development as of October 22, 2022. In order to protect against potential damage, without the knowledge or approval of Salon Development, Brennen opened a company directly competitive to Salon Development called "Unadilla Hair Co." located at 1004 Rt 7, Unadilla, NY. The distance between Hair Co and Salon Development operations in Sidney, New York is less than five miles. A copy of the area map demonstrating the distance between the salons is annexed the Declaration of Jonathan Shaw as Exhibit "C."

21. Unbeknownst to the management of Salon Development, not only had Brennen opened her competing salon, she also recruited Vinal to work with her.

22. Throughout the course of Brennen and Vinal's employment with Salon Development, the company provided them both with specialized training unique to Salon Development. They each obtained a significant amount of information about Salon Development and its products and services, in addition to the unique information they obtain about the specific customers they service. That information includes such things as: the strengths and weaknesses of Salon Development's products and services; the manner in which Salon Development sells its products and services; the way Salon Development differentiates its products and services from its competitors; the relative advantages and disadvantages between Salon Development's products and services and those of its competitors; the methods by which Salon Development effectively competes with its competitors; Salon Development's pricing models and costs; Salon Development's planned improvements and expected new products; and complaints made by Salon Development customers. Virtually all of this information is confidential to Salon Development and should never be disclosed or used by a former employee who goes to work with a competitor.

23. Throughout the course of their employment with Salon Development, Vinal and Brennen each had substantial, regular, and direct contact with Salon Development's prospective and current clients. As a stylist works with a customer on his or her look and image, the relationship formed between them is often a strong one. As such, the need for an NDA is critical to ensure that a departing employee does not attempt to poach the pool of employees. As it is, Salon Development has only four stylists so that the departure of 50% of them caused an immediate impediment to it short term operations.

24. Throughout the course of their employment with Salon Development, Brennen and Vinal also had access to and possession of, and used on a regular basis, Salon Development's confidential, proprietary, and trade secret information. Such information includes, but is not limited to, Salon Development's confidential business methods, procedures, pricing, and marketing strategy, customer information, including the names, addresses, preferences (such as specific coloring and perm formulas), and other needs of Salon Development customers (collectively, the "Proprietary Information").

25. Salon Development has taken reasonable steps to maintain the secrecy of the Proprietary Information. Such efforts include, among other things, requiring employees to enter into confidentiality and restrictive covenant agreements such as those entered into by Brennen and Vinal. Salon Development maintains a computer system that has a restricted password firewall to ensure that information is accessed on a need-to-know basis based upon the employee's position with the company.

26. When Salon Development learned that Brennen opened Hair Co and that she and Vinal were competing at a location less than five miles away, Salon Development provided to them correspondence affording them the opportunity to comply with their NDA. Salon Development received the certified mail receipt sent to Vinal and was informed that Brennen, knowing of the content, tore the letter up unopened and threw it in the garbage. A copy of the notices are attached to the Declaration of Jonathan Shaw as Exhibit D.

27. Hair Co. is a direct competitor of Salon Development having the same target market and selling the same or similar products and services.

28. As of the date of this filing, Brennen and Vinal are still working for Hair Co in the same territory that they covered while at Salon Development in direct violation of the NDAs.

29. Brennen and Vinal's conduct constitute a violation of their NDAs.

30. Furthermore, because Brennen and Vinal are performing the same job functions on behalf of Hair Co. as those they performed on behalf of Salon Development in the same sales territory, Brennen and Vinal either have used or disclosed or inevitably will use and disclose Salon Development's Proprietary Information for the benefit of Hair Co. and to the detriment of Salon Development. Such conduct constitutes a violation of the Agreements.

Irreparable Harm to ADPS

31. Brennen and Vinal's conduct is unfairly harming Salon Development's business. As it goes to the Salon Development's goodwill, the harm is irreparable.

32. If Brennen and Vinal's conduct is not enjoined, they will continue to impermissibly compete and to disclose and use, or inevitably disclose and use, Salon Development's Proprietary Information to Salon Development's competitive disadvantage. Salon Development will lose clients and prospective clients, and also stands to lose employees, vendors, and marketing partners. Furthermore, Salon Development will lose goodwill and the referral business of its clients and marketing partners, as well as revenues in an amount that cannot be readily ascertained.

33. Upon information and belief, as a direct result of Brennen and Vinal's actions, Salon Development has lost, and will continue to lose, the value of its Proprietary Information. Such information was developed and maintained at great expense and effort on the part of Salon Development and belongs to Salon Development. The Salon Development Proprietary Information that Brennen and Vinal obtained and learned while employed at Salon Development will aid them in their employment with Hair Co, a direct competitor of Salon Development.

34. Unless enjoined, Brennen and Vinal will continue to breach the Agreements and their legal duties and obligations by working at Hair Co., disclosing Salon Development's Proprietary Information, and misusing Salon Development's Proprietary Information to them and Hair Co's advantage and to the competitive disadvantage of Salon Development.

35. If Brennen and Vinal are not immediately barred from violating the Agreements and from using and disclosing Salon Development's Proprietary Information, Salon Development will continue to suffer irreparable harm. Salon Development lacks an adequate remedy at law to address the harm that it is suffering as a result of Brennen and Vinal's actions. Indeed, as noted above, Vinal and Brennen agreed that any violation of the Agreements would irreparably harm Salon Development for which there would be no "adequate remedy at law" and therefore would entitle Salon Development to injunctive relief to prevent further damage to Salon Development.

36. Due to Brennen's and Vinal's disclosure and/or inevitable disclosure of Proprietary Information, as well as the loss of Salon Development's competitive edge, client goodwill, and competition, Salon Development is entitled to permanent injunctive relief barring Brennen and Vinal from violating their nondisclosure, non-competition, and non-solicitation obligations and from continuing to unfairly compete against Salon Development and wrongfully use and disclose its Proprietary Information, as set forth more fully below. Salon Development is also entitled to damages, including lost profits, interest, costs, and attorneys' fees.

37. By ignoring and disavowing their obligations under the clear restrictive covenants contained in the Agreements, Brennen's and Vinal's breaches of the Agreements constitute the type of willful, fraudulent, and malicious conduct that warrant punitive damages.

## FIRST COUNT
### Breach of Contract
### (Breach of Non-Compete)

38. The preceding paragraphs are re-alleged and incorporated by reference.

39. Brennen and Vinal each voluntarily entered into the Agreements with Salon Development.

40. The Agreements are each valid, binding, and enforceable contracts.

41. The Agreements are each supported by adequate legal consideration.

42. Salon Development fully performed as required under the Agreements.

43. Vinal and Brennen each breached all or some of the Agreements by engaging in the conduct described herein, including owning and working for Hair Co., in the same or similar capacity, and in the same territory as each worked for Salon Development.

44. As a result of Brennen's and Vinal's breaches, Salon Development has suffered damages.

45. As a result of Brennen's and Vinal's breaches, Salon Development has suffered irreparable injury, and Salon Development will continue to suffer irreparable injury for which there is no adequate remedy at law.

46. Salon Development is entitled to damages, costs, and disbursements incurred in this action, including attorneys' fees, and to permanent injunctive relief against further breaches of the Agreements.

### Count II
### Breach of Duty of Loyalty

47. The preceding paragraphs are re-alleged and incorporated by reference.

48. As an employee of Salon Development, Brennen and Vinal owed their employer an undivided duty of loyalty including, but not limited to, the duty to advance the interests of Salon Development, the duty to preserve Salon Development's Confidential Information, and the duty

not to use any of Salon Development's Confidential Information in any way adverse to Salon Development's interests.

49. Following their separation from Salon Development, Brennen and Vinal continue to owe a duty to Salon Development not to make use of its Confidential Information.

50. Upon information and belief, Vinal and Brennen breached their duty of loyalty to Salon Development by obtaining Salon Development's Confidential Information with full knowledge they would be resigning to form and join Hair Co., where they will use or disclose Salon Development's Confidential Information, and through their establishment and working for Hair Co., a direct competitor of Salon Development, in contravention of the Agreements.

51. Salon Development's breaches of the Agreements have wrongfully benefitted Vinal, Brennen and Hair Co., which, in turn, have caused Salon Development to suffer damages.

52. As a result of Vinal's and Brennen's breaches, Salon Development has suffered irreparable injury, and Salon Development will suffer further irreparable injury for which there is no adequate remedy at law.

53. Salon Development is entitled to damages, costs and permanent injunctive relief against further breaches of the Agreements by Vinal and Brennen

### Count III
### Tortious Interference

54. The preceding paragraphs are re-alleged and incorporated by reference.

55. As an agent and employee of Hair Co., Brennen (both as a person having knowledge of the covenant not to solicit employees as well as an owner of Hair Co.) solicited and hired Vinal.

56. Salon Development had a valid and existing agreement and working arrangement with Vinal as well as a written NDA.

57. The acts of Hair Co. improperly interfered with Salon Development's agreement with Vinal.

58. Hair Co. knew or should have known of the contract between Vinal and Salon Development inclusive of the NDA.

59. Hair Co. voluntarily accepted and retained the use of the Proprietary Information provided to Vinal by Salon Development.

60. As a result, Salon Development has suffered damages.

**REQUESTS FOR RELIEF**

WHEREFORE, Salon Development respectfully requests:

A. That their Court enjoin Brennen and Vinal from directly or indirectly undertaking the following activities:

(i) Working or performing substantially similar services for any competitor of Salon Development, including, without limitation, Hair Co., in the restricting zone (10 miles) for a period of twelve (12) months from the date of entry of an Order granting Salon Development injunctive relief;
(ii) Violating the terms and conditions of the Agreements with Salon Development;
(iii) Using or disclosing at any time in the future, Salon Development's confidential, proprietary, or trade secret business information or property;
(iv) Interfering in any way with any current contract, client relationship, prospective client relationship, or marketing partner relationship of Salon Development; and
(v) Breaching any loyalty obligation to Salon Development, including, but not limited to, appropriating any business opportunity of Salon Development, engaging in deceptive acts or statements with regard to Salon Development's abilities, experiences, and personnel, and from otherwise attempting to gain unfair advantage against Salon Development.

B. That Brennen and Vinal be ordered to return all Salon Development's confidential information and property to Salon Development, including, but not limited to, requests for price lists, vendor lists, vendor pricing, financials, marketing material, customer lists, customer correspondence, marketing data, prospect lists, client contact information, prospect client contact

information, strategic planning information, employee lists, client information, internal strengths and weakness information, business plans, proprietary or trade secret information, confidential client and vendor information and confidential and proprietary marketing partner information, in any form including electronic and hard copy form;

    C. That Brennen and Vinal be restrained from destroying or disposing of any paper documents in their possession, custody or control, or deleting anything from any computers to which they have access, including smartphones, PDAs or any other electronic storage devices, including e-mail, databases, and any other electronically stored data that relate to, evidence or concern any of the issues involved in this litigation and that they immediately turn over all of the electronic devices in their possession, custody or control for non-destructive imaging to preserve the contents of these electronic devices; and

    D. That Salon Development be granted a judgment against all defendants, jointly and severally, for monetary damages, including, but not limited to, exemplary and punitive damages, lost profits, costs associated with Brennen and Vinal's breaching the Agreements, breach of loyalty and Hair Co. and Brennen's tortious interference, and all other appropriate damages, as well as all interest, costs and disbursements of this action, including attorneys' fees, as contractually agreed upon, and such other and further relief and this Court may deem just and proper.

Dated: November 18, 2022        Respectfully submitted,

                                */s/ Bruce E. Baldinger*
                                The Law Offices of Bruce E. Baldinger, LLC
                                365 South Street
                                Morristown, NJ 07960
                                (908) 218-0060
                                *bbaldinger@baldingerlaw.com*

## VERIFICATION

Jonathan Shaw, of full age, certifies and state:

1. I am the President of Salon Development, Inc. My responsibilities include the management of employees of Salon Development Inc., Plaintiff in the above-captioned action, and am authorized to make this verification on its behalf.

2. I have read the foregoing Complaint and hereby verify that all of the statements made therein are true to the best of my knowledge, information and belief.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Jonathan Shaw

Dated: 11/18/2022